IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALICE WARD | : | CIVIL ACTION |
| | : | NO. 14-00017 |
| v. | : | |
| COMMONWEALTH OF PENNSYLVANIA, et al. | : | |
| O'NEILL, J. | : | September 22, 2014 |

**<u>MEMORANDUM</u>**

Presently before me are three motions to dismiss plaintiff's second amendment complaint. First is a motion to dismiss by the Commonwealth of Pennsylvania Board of Probation and Parole (CPBPP), chairman of CPBPP Michael Potteiger (in his individual and official capacity) and the Commonwealth of Pennsylvania (Dkt. No. 38) and plaintiff's response thereto (Dkt. No. 41). Second is a motion to dismiss by Delaware County Office of Adult Probation and Parole (DCOAPP), director of DCOAPP Michael Raith and DCOAPP probation officer Alicia Sweeney in their official capacities (Dkt. No. 32), plaintiff's response (Dkt. No. 39) and defendants' reply thereto (Dkt. No. 36). Third is a motion to dismiss by Raith and Sweeney in their individual capacities and Delaware County (Dkt. No. 30), plaintiff's response (Dkt. No. 37) and defendants' reply thereto (Dkt. No. 40). For the following reasons I will grant defendants' motions.

**BACKGROUND**

On January 3, 2012 plaintiff was working as a traffic controller. Dkt. No. 29 at ¶ 33. On that day, Nicolas DeSimone struck plaintiff with his motor vehicle while driving under the influence of a controlled substance. <u>Id.</u> at ¶¶ 35, 38. At the time of the incident DeSimone was a probationer under DCOAPP's supervision and was assigned to DCOAPP probation officer

Sweeney.  Id. at ¶¶ 11-15.  As a result of the incident DeSimone was criminally prosecuted and incarcerated.  Id. at ¶ 39.

Plaintiff alleges that before he struck her with his motor vehicle DeSimone met with Sweeney for a scheduled appointment where he admitted to Sweeney that he was under the influence of a controlled substance in violation of the terms of his probation.  Id. at ¶¶ 17, 25.  Plaintiff claims that Sweeney failed to detain or arrest DeSimone for violating the terms of his probation and that Sweeney knew or should have known that he would leave and operate a motor vehicle.  Id. at ¶¶ 27, 29, 30, 56, 70.  Plaintiff further alleges that Sweeney acted pursuant to defendants' policy and custom of intentionally failing to enforce probation terms in order to create the false impression of reduced recidivism rates.  Id. at ¶¶ 25, 29.

On January 3, 2014 plaintiff brought this action.  Dkt. No. 1.  On March 11, 2014 plaintiff filed her first amended complaint.  Dkt. No. 16.  On April 1, 2014 I granted plaintiff's motion for leave to file a second amended complaint.  Dkt. No. 22.  On April 17, 2014 plaintiff filed her second amended complaint.  Dkt. No. 29.  In her second amended complaint, plaintiff brings suit pursuant to 42 U.S.C. § 1983 claiming that defendants violated her Constitutional rights under the Fourth and Fourteenth Amendments (Count I) when Sweeney released DeSimone on January 3, 2012 in accordance with defendants' policy and practice of failing to detain probationers under the influence of controlled substances.  See Id. at ¶¶ 82-89.  Plaintiff also alleges defendants violated her rights pursuant to Article I, § 1 of the Pennsylvania Constitution (Count II).  See Id. at ¶¶ 90-97.  Plaintiff requests monetary damages, punitive damages (Count III) and declaratory and injunctive relief (Count IV), presumably pursuant to both her federal and state law claims.  See Id. at ¶¶ 98-100, 101-03.

**STANDARD OF REVIEW**

**I.      Motion to Dismiss for Lack of Subject Matter Jurisdiction:  12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a complaint for lack of subject matter jurisdiction.  A motion under Rule 12(b)(1) may be treated as either a facial attack on the complaint or a factual challenge to the court's subject matter jurisdiction.  Gould Elecs., Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000).  A court reviewing a facial attack may consider only the allegations of the complaint and any documents referenced therein or attached thereto in the light most favorable to the plaintiff.  Id.  In reviewing a factual attack, a court may consider evidence outside the pleadings.  Id.

Plaintiff bears the burden of persuasion when subject matter jurisdiction is challenged, but the legal standard for surviving a Rule 12(b)(1) motion is a low one.  Kehr Packages v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991).  "A claim may be dismissed under Rule 12(b)(1) only if it 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous.'"  Gould, 220 F.3d at 178.  Nevertheless, "dismissal for lack of jurisdiction is not appropriate merely because the legal theory alleged is probably false, but only because the right claimed is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'"  Kulick v. Pocono Downs Racing Ass'n, 816 F.2d 895, 899 (3d Cir. 1987), quoting Oneida Indian Nation v. Cnty. of Oneida, 414 U.S. 661, 666 (1974).

Since Eleventh Amendment immunity deprives a court of subject matter jurisdiction, a motion to dismiss based on Eleventh Amendment grounds "may properly be considered a motion to dismiss the complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)."  Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 694 n.2 (3d Cir. 1996).  Furthermore, a court

may consider the effect of the Eleventh Amendment on its jurisdiction *sua sponte*.  See Sindia Expedition, Inc. v. Wrecked & Abandoned Vessel, Known as The Sindia, 895 F.2d 116, 119 (3d Cir. 1990).

## II.     Motion to Dismiss for Failure to State a Claim:  12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," though plaintiff's obligation to state the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)."  Id. (citations omitted).  This "simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" the necessary element.  Id. at 556.  The Court of Appeals has made clear that after Ashcroft v. Iqbal, 556 U.S. 662 (2009), "conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'  To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009), quoting Iqbal, 556 U.S. at 678.  The Court also set forth a two part-analysis for reviewing motions to dismiss in light of Twombly and Iqbal:

> First, the factual and legal elements of a claim should be separated.
> The District Court must accept all of the complaint's well-pleaded
> facts as true, but may disregard any legal conclusions.  Second, a
> District Court must then determine whether the facts alleged in the

4

>complaint are sufficient to show that the plaintiff has a "plausible claim for relief."

Id. at 210-11, quoting Iqbal, 556 U.S. at 679.  The Court explained, "a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts."  Id., citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679, quoting Fed. R. Civ. P. 8(a)(2).

**I.     Federal Claims**

   **A.     Eleventh Amendment Immunity**

Plaintiff brings federal claims pursuant to § 1983 alleging all defendants violated her Constitutional rights under the Fourth and Fourteenth Amendments (Count I).  See Dkt. No. 29 at ¶ 82-89.  Pursuant to the Eleventh Amendment[1] "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State."  Emps. of Dep't of Pub. Health & Welfare, Mo. v. Dep't of Pub. Health & Welfare, Mo., 411 U.S. 279, 280 (1973), citing Hans v. Louisiana, 134 U.S. 1 (1890).  "Eleventh Amendment immunity is, however, subject to three primary exceptions: (1) congressional abrogation, (2) waiver by the state, and (3) suits against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law."  Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess, 297 F.3d 310, 323 (3d Cir. 2002).  Congress did not abrogate Eleventh Amendment immunity

---

[1] The Eleventh Amendment of the U.S. Constitution provides: "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.

when it enacted § 1983.  See Quern v. Jordan, 440 U.S. 332, 345 (1979).  Furthermore, Pennsylvania has not waived its Eleventh Amendment immunity.[2]

The Eleventh Amendment prohibits suits against state agencies and departments in addition to the states themselves.  See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 104 (1984).  CPBPP is an agency of the Commonwealth of Pennsylvania.  See Dkt. No. 29 at ¶ 5.  Thus, defendant Commonwealth of Pennsylvania and its agency defendant CPBPP are immune from suit by plaintiff under the Eleventh Amendment.

Plaintiff claims that defendant DCOAPP is an entity of Delaware County subject to §1983 liability.  Id. at ¶ 8.  However, the probation and parole departments of Pennsylvania's

---

[2] Plaintiff contends that sovereign immunity does not apply to defendants because Pennsylvania waived its sovereign immunity pursuant to 42 Pa. C.S.A. §§ 8522(b)(1) and (3), which provide exceptions to Pennsylvania's sovereign immunity for suits arising from the operation of motor vehicles and use of personal property in the possession or control of the Commonwealth.  See Dkt Nos. 37 at 14-15 & 41 at 11-12.  Plaintiff asserts that Sweeney was in "control" of DeSimone's car during their meeting, failed to stop DeSimone from operating his vehicle and thus is excepted from immunity.  Id.  Plaintiff's contention that Sweeney was in "control" of DeSimone's vehicle such that the motor vehicle exception of § 8522(b)(1) would subject defendants to liability for DeSimone's later operation of his vehicle is doubtful as a matter of state law.  See Gale v. City of Phila., 86 A.3d 318, 322 (Pa. Commw. Ct. 2014) (reviewing case law and concluding that "[t]he language of the statute and our cases make clear, however, that where an employee . . . has not acted by putting a vehicle in motion liability under the vehicle exception to governmental immunity will not attach" and rejecting plaintiff's claim that the motor vehicle exception applied since "her injuries arose from the police officers' failure to prevent [a third party] from operating the vehicle and not from their own operation of a vehicle").  It is unclear whether plaintiff's §§ 8522(b)(1) and (3) arguments are also intended to rebut defendants' Eleventh Amendment immunity defense.  See Dkt. No. 38 (noting that Pennsylvania has expressly withheld consent to suit with regard to Eleventh Amendment immunity).  In an abundance of caution, I will note here that 42 Pa. C.S.A. § 8521(b) specifically provides that "[n]othing contained in [§ 8522] shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States."  See also Booze v. Wetzel, No. 12-01307, 2014 WL 2472049, at *1 (M.D. Pa. June 3, 2014) ("Pennsylvania has explicitly stated that waivers within the meaning of those statutes are irrelevant for purposes of Eleventh Amendment sovereign immunity.").  Thus, plaintiff's contention that the exceptions contained in 42 Pa. C.S.A. §§ 8522(b)(1) and (3) apply in this case has no bearing on defendants' Eleventh Amendment immunity.

judicial districts are state entities for purposes of Eleventh Amendment immunity.  See Benn v. First Judicial Dist., 426 F.3d 233 (3d Cir. 2005); Haybarger v. Lawrence Cnty. Adult Prob. and Parole, 551 F.3d 193, 198 (3d Cir. 2008).  See also Henry v. Phila. Adult Prob. and Parole, 297 F. App'x 90, 91 n.1 (3d Cir. 2008) (noting that the Philadelphia Adult Probation and Parole Department is an arm of Pennsylvania and that the "Eleventh Amendment would have barred any claims on appeal against the PAPPD.").  Thus, defendant DCOAPP is an agency of the Commonwealth of Pennsylvania and immune from plaintiff's suit under the Eleventh Amendment.[3]

Additionally, Eleventh Amendment immunity extends to individual state officials sued in their official capacities for monetary relief.  See Kentucky v. Graham, 473 U.S. 159, 170 (1985).  See also Hafer v. Melo, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity therefore should be treated as suits against the State").  Thus, with regard to plaintiff's claims against them in their official capacities Raith, Sweeney and Potteiger are state actors immune from suit under the Eleventh Amendment.[4]

---

[3] Plaintiff names Delaware County as a defendant in this action because it "operated through defendants Raith, Sweeney, [and] DCOAPP." Dkt. No. 29 at ¶ 7.  However, because DCOAPP is an entity of the Commonwealth of Pennsylvania, not Delaware County, Raith and Sweeney are state rather than county officials.  Plaintiff's claims against Delaware County must fail because she has not made factual allegations sufficient to show that Delaware County exercised any control over the policies, practices or events at issue in this case.  See Thompson v. Williams, No. 09-1432, 2013 WL 2452205, at *6 (W.D. Pa. June 5, 2013) (dismissing Monell claims against Fayette County for the actions of Fayettville County Department of Adult Probation and Parole because "Fayette County cannot be held accountable for the actions of a state entity and its agents over which it has no control.").  Accordingly, I will dismiss plaintiff's federal and state law claims against Delaware County.

[4] Eleventh Amendment immunity, however, does not apply to bar plaintiff's claims against Raith, Sweeney or Potteiger in their individual capacities.  See Hafer, 502 U.S. at 31.  Nor does it bar plaintiff's claims against defendants for declaratory and injunctive relief in Count IV of her second amended complaint, presumably pursuant to both § 1983 and the Pennsylvania Constitution.  See Dkt. No. 29 at 101-03.  Under the Ex Parte Young doctrine, the Eleventh

For the foregoing reasons, I will dismiss plaintiff's federal claims against the Commonwealth of Pennsylvania, its agencies CPBPP and DCOAPP, and Raith, Sweeney and Potteiger in their official capacities pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.

### B.     State Created Danger

Even if I had jurisdiction to hear plaintiff's section 1983 claims against the Commonwealth of Pennsylvania, its agencies CPBPP and DCOAPP and Raith, Sweeney and Potteiger in their official capacities, her claims against them would fail because her allegations are insufficient to state a claim based upon a theory of a state-create danger.  Likewise, her section 1983 claims against Raith, Sweeney and Potteiger in their individual capacities and her claims against defendants for declaratory and injunctive relief cannot withstand defendants' motions to dismiss.

Plaintiff claims that defendants' policies and procedures resulted in a state-created danger that violated her due process rights under the Fourth and Fourteenth Amendment.  See Dkt. No. 29 at ¶¶ 82-89.  "[C]ases predicating constitutional liability on a state-created danger theory have four common elements: (1) the harm ultimately caused was foreseeable and fairly direct; (2) the state actor acted in willful disregard for the safety of the plaintiff; (3) there existed some relationship between the state and the plaintiff; (4) the state actors used their authority to create an opportunity that otherwise would not have existed for the third party's crime to occur." Kneipp v. Tedder, 95 F.3d 1199, 1208 (3d Cir. 1996).

---

Amendment does not bar plaintiff from seeking prospective relief against state officials in federal court for ongoing violations of federal law.  See Ex parte Young, 209 U.S. 123 (1908).  Plaintiff seeks prospective relief in her complaint because she requests that I declare that allegedly ongoing policies and practices of defendants violate federal law and asks that I enjoin those practices.  See Dkt. No. 29 at ¶ 15.

Generally, "the Due Process Clause imposes no affirmative duty to protect a citizen who is not in state custody." Bright v. Westmoreland Cnty., 443 F.3d 276, 281 (3d Cir. 2006). However, a "constitutional violation can occur when state authority is affirmatively employed in a manner that injures a citizen or renders him more vulnerable to injury from another source than he or she would have been in the absence of state intervention." Id. (citations omitted). Thus, "[i]t is misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause." Id. at 282. Indeed, "state actors cannot use their authority to create such an opportunity [under the fourth element of the state-created danger theory] by failing to act." Id. at 291 n.6 (citations omitted).

In Bright plaintiff argued the state had affirmatively created the danger that led to the tragic murder of his daughter by a probationer. Prior to the murder, a probation officer had personally observed the probationer violate the terms of his probation and failed to detain the probationer. There was also an "inexplicable delay" of ten weeks before a probation revocation hearing was scheduled. Id. at 284. The United States Court of Appeals for the Third Circuit expressly held that

> the state cannot 'create danger' giving rise to substantive due process liability by failing to more expeditiously seek someone's detention, by expressing an intention to seek such detention without doing so, or by taking note of a probation violation without taking steps to promptly secure the revocation of the probationer's probation.

Id. at 283-84.

This case is analogous to Bright. The substance of plaintiff's complaint is that Sweeney failed "to more expeditiously seek someone's detention" and took "note of a probation violation without taking steps to promptly secure the revocation of the probationer's probation" when she failed to detain DeSimone or prevent him from driving after their meeting. Id.; Dkt. No. 29 at ¶¶

9

27, 29.  Plaintiff attempts to put a different spin on her failure-to-detain claim by alleging the existence of an agency and/or statewide policy or practice of failing to seek probationers' detention or to take note of probation violations.  See Dkt. No. 29 at ¶ 25.  That allegation cannot convert plaintiff's fundamental claims stemming from Sweeney's alleged failure to act into an affirmative action giving rise to a state-created danger claim under § 1983.  Plaintiff has not alleged defendants' "misuse" but rather their "failure to use" state authority to detain probation violators.  Bright, 443 F.3d at 282.  Thus, plaintiff's claims are squarely the same kind of failure-to-detain claim that the Court of Appeals found insufficient to sustain a state-created danger theory in Bright.

Plaintiff contends, however, that the line between "action and inaction is not always clear" and analogizes to Kneipp in an attempt to sustain her state-created danger claim.  See Dkt No. 41 at 11, n.3.  Kneipp is readily distinguishable from plaintiff's case.  In Kneipp, plaintiff was stopped by the police while walking home intoxicated with her husband along the side of a road.  The police released plaintiff's husband to walk home, but not the plaintiff.  Later, the police released the plaintiff to walk home alone despite her severe intoxication and she was struck by a car.  Kneipp, 95 F.3d at 1201-03.  The Court of Appeals reasoned that "the police officers affirmatively placed [plaintiff] in a position of danger" when they released her from custody on the side of a road while she was intoxicated.  Id. at 1211.  Critically, the Court of Appeals concluded that a jury could have found plaintiff "was in a worse position after the police intervened than she would have been if they had not done so" because prior to police intervention she had been accompanied by her husband, but afterwards the police exposed her to the dangers of the road alone.  Id. at 1209.

In this case, plaintiff was not placed in any worse position than she would have been absent DeSimone's meeting with Sweeney.  It was DeSimone's actions that caused the danger to plaintiff.  While Sweeney allegedly did nothing to decrease the harm posed by DeSimone to plaintiff and the public, plaintiff has not alleged sufficient facts that Sweeney did anything to increase or alter that pre-existing threat when she failed to intervene or detain DeSimone.  By contrast, in Kneipp the police actually intervened, detained and changed the circumstances of the plaintiff's condition by causing her to shift from an accompanied to unaccompanied state while walking intoxicated along the side of the road.

Thus, plaintiff has not alleged facts sufficient to state a claim against any defendant based upon a state-created danger theory.  I will dismiss plaintiff's § 1983 claims against defendants in their entirety.

## II.     State Law Claims

### A.     Eleventh Amendment

Plaintiff also brings claims against defendants under Article 1, § 1 of the Pennsylvania Constitution.[5]  See Dkt. No. 29 at ¶¶ 90-97.  I find that the Eleventh Amendment bars these claims against the Commonwealth of Pennsylvania, CPBPP, DCOAPP and the individual defendants in their official capacities.

"A federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment."  Pennhurst, 465 U.S. at 106.  I may not grant "relief against state officials on the basis of state law, whether prospective or retroactive."  Smolow v. Hafer, 353 F. Supp. 2d 561, 569 (E.D. Pa. 2005), citing Pennhurst, 465 U.S. at 106.

---

[5]     Article I, § 1 of the Pennsylvania Constitution provides: "[a]ll men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness."  Pa. Const. art. I, § 1.

"Simply put, the Eleventh Amendment prohibits a federal court from considering a claim that a state official violated state law in carrying out his or her official responsibilities." Pennsylvania Fed'n of Sportsmen's Clubs, Inc. v. Hess, 297 F.3d 310, 325 (3d Cir. 2002).  See also Hayes v. Reed, No. 96-4941, 1997 WL 379179 (E.D. Pa. July 2, 1997) (dismissing plaintiff's state statutory and constitutional claims under Pennhurst).  For the foregoing reasons, I will dismiss all of plaintiff's state law claims for either prospective or retroactive relief against the Commonwealth of Pennsylvania, its agencies CPBPP and DCOAPP, and Raith, Sweeney and Potteiger in their official capacities.

Pennhurst's bar on pendant state-law claims pursuant to the Eleventh Amendment does not, however, extend to plaintiff's state law claims against Raith, Sweeney and Potteiger acting in their individual capacities.  See Bangura v. City of Phila., No. 07-127, 2007 WL 3376676, at *4 (E.D. Pa. Oct. 15, 2007) (listing appellate case law and declining to apply Eleventh Amendment immunity to individual capacity claims based on state law); Torrey v. New Jersey, No. 13-1192, 2014 WL 941308, at *14 (D.N.J. Mar. 11, 2014) ("The jurisdictional limitation recognized in Pennhurst, however, does not apply to an individual capacity claim seeking damages against a state official, even if the claim is based on state law."); Burda v. Pa. Dep't of Corr., No. 11-0500, 2013 WL 393443, at *13 (M.D. Pa. Jan. 4, 2013) report and recommendation adopted, No. 11-500, 2013 WL 393398 (M.D. Pa. Jan. 31, 2013) aff'd, 545 F. App'x 181 (3d Cir. 2013).  Thus, I will not dismiss plaintiff's state-law claims against defendants in their individual capacities on Eleventh Amendment grounds.

      **B.**    **Supplemental Jurisdiction**

At the same time, a district court may decline to exercise supplemental jurisdiction over a claim where

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367.

"[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." Bright, 443 F.3d at 286, citing Borough of W. Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995).  See also U.S. ex rel. Simpson v. Bayer Corp., No. 05-3895, 2012 WL 3600302, at *5 (D.N.J. Aug. 21, 2012) (noting that "the 'general approach is for a district court to . . . hold that supplemental jurisdiction should not be exercised when there is no longer any basis for original jurisdiction' and declining to exercise jurisdiction over remaining state law claims"); Bangura, 2007 WL 3376676, at *4 (declining to exercise supplemental jurisdiction where only state law claims remained).  A federal court may adjudicate claims against state-actors on immunity grounds while at the same time declining to exercise supplemental jurisdiction over plaintiff's state law claims against defendants in their individual capacities.  See Bright, 443 F.3d at 286.

Here, I will dismiss all claims over which I have original jurisdiction.  I find no affirmative justification for exercising supplemental jurisdiction over plaintiff's remaining state law claims.  Additionally, the issues of state law raised by plaintiff's claims under the Pennsylvania Constitution are novel, complex and better suited for resolution by a Pennsylvania state court.  See Mulgrew v. Fumo, No. 03-5039, 2004 WL 1699368, at *4 (E.D. Pa. July 29, 2004) (declining to exercise jurisdiction over claims arising under Article I of the Pennsylvania

Constitution because the issue of whether direct relief and what types of relief are available under the Pennsylvania Constitution is unsettled, but also noting that at least some "direct causes of action may prevail under the Pennsylvania Constitution" under Article I, § 1.).  See also Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc., 140 F.3d 478, 487 (3d Cir. 1998) (affirming district court declining supplemental jurisdiction over state constitutional claims and reasoning that the interpretation of a state constitution is properly left to state courts).  Thus, I will decline to exercise jurisdiction over plaintiff's state law claims against defendants Raith, Sweeney and Potteiger in their individual capacities.

## CONCLUSION

For the reasons set forth above, I will decline to exercise supplemental jurisdiction over plaintiff's state law claims against defendants Raith, Sweeney and Potteiger in their individual capacities, which I will dismiss without prejudice to plaintiff's right to refile those claims in state court.  As to all other claims I will grant defendants' motions to dismiss.

An appropriate Order follows.